HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE DUTRA, a minor, by and through his Guardian, COMMENCEMENT BAY GUARDIANSHIP SERVICES; and MISTY M. DUTRA, individually and as natural mother of JOSE DUTRA, a minor,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. C04-5025 RBL

ORDER

On October 6, 2005, following a trial to the bench, this Court entered findings of fact and conclusions of law holding the United States liable for injuries caused to Jose Dutra by the medical negligence of a physician insured by the government. The total economic loss awarded to Jose Dutra was $4,428,589. Of that amount, $3,681,766, was awarded for future medical goods and services required for Jose Dutra according to a Life Care Plan submitted to the Court on his behalf. Before and during trial the government requested that the Court consider placing the future medical expenses award into a reversionary medical trust. The government cited RCW 4.56.260 and case law from Colorado and the Tenth Circuit as legal authority supporting the Court's discretion to take such action. The Court rejected

ORDER
Page - 1

the proposed reversionary medical trust which would have resulted in a return to the government of residual funds within the trust upon the death of Jose Dutra.[1]

The government appealed the Court's decision regarding a reversionary trust and, in the process, modified its explanation of what this Court was asked to do at trial. The government convinced the Circuit panel that before and during trial, it had requested that the Court solicit formal written proposals from the parties, as required by RCW 4.56.260, regardless of whether the Court was inclined or disinclined to order that future medical expenses be placed in a medical reversionary trust.[2]

On remand, this Court has been directed to implement the provisions of RCW 4.56.260. On October 4, 2006, the Court requested written proposals for periodic payment of future medical expenses. On October 13, 2006 the Court received proposals from the parties. As promised, the government has submitted two proposals, both of which involve a reversionary medical trust. If accepted, each proposal would require that the residue of the trust revert back to the government upon Jose Dutra's death. For the reasons expressed in the hearing of October 4, 2006, this Court rejects such proposals. These reasons are summarized as follows:

1) The government's proposal would result in a trustee with divided loyalties between Jose Dutra's on-going medical needs and the government's interest in recouping residual funds made available by a premature death of Jose Dutra. While remainder trusts are not uncommon, here, the express purpose of the trust is to save money for the grantor/tortfeasor at the expense of the beneficiary/victim.

---

[1] In the medical reversionary trust described by the government, the United States would be grantor and Jose Dutra would be beneficiary. The trust would be administered by a trustee selected by the government. Upon the death of Jose Dutra, the administrator would return the residue to the government. The apparent conflict of an administrator doing what is best for the beneficiary while, at the same time, preserving trust assets for the government which would recover in the event of premature death of the beneficiary has never been dealt with to this Court's satisfaction.

[2] The Court finds it noteworthy that following the Court's decision on the issue, the government did not request clarification or reconsideration or otherwise articulate its belief that the Court misunderstood the true nature and scope of its request. Indeed, at a status conference on October 4, 2006, the government's trial lawyer confirmed what all others in the Courtroom understood from the beginning: the government wanted a medical reversionary trust and RCW 4.56.260 was cited only as the vehicle by which it sought to persuade the Court to adopt one. It did not ask for the statute to be implemented as a stand-alone proposition. For reasons that will become clear in this opinion, the government's trial lawyer, unlike those who managed the appeal, understood that if the Court was not going to order a reversionary medical trust, there was no benefit to anyone to go through the time and expense of submitting formal periodic payment proposals.

ORDER
Page - 2

2) The government's proposal represents a significant change in Washington tort law. Unlike Colorado's law (which the U.S. cites as persuasive authority), Washington law does not provide for the termination of future medical payments by a tortfeasor upon the death of the plaintiff. In Washington, future medical damages are predicted by the trier of fact using life expectancy tables, opinions about future needs and economic assumptions to reduce future costs to present value. The resulting conclusion results in an award or verdict which precedes any consideration of periodic payments. RCW 4.56.260(1). Once the finder of fact determines the amount of future damages, the trial court has no authority to reduce the award by accepting a proposal that costs the tortfeasor less than the exact amount of the award or verdict. The size of the award does not change in the future depending on whether the plaintiff lives a shorter or longer life than anticipated at the time of trial.

3) A medical reversionary trust is not in the best interest of the plaintiff who is the victim of the defendant's negligence. See RCW 4.56.260(2); *Hull v. United States*, 971 F.2d 1499, 1505 (10th Cir. 1992). In meeting the on-going needs of Jose Dutra, those responsible for his care need maximum flexibility over the assets made available to him as a result of the Court's award. A medical reversionary trust that delays payment to the plaintiff is not helpful.

As stated by the Court during the October 4, 2006 hearing, the proposal which, "in the discretion of the Court and the interests of justice best provides for the future needs of the claimant," (RCW 4.56.260(2)), is that proposal which puts the most money in the special needs trust in the shortest time. Plaintiff's proposal number 1 is consistent with the Court's earlier observation. Jose Dutra needs immediate, comprehensive therapy for the effects of the brain damage he has suffered. That care was deferred by a mother ill-equipped to deal with a child with Jose Dutra's needs. The care was then delayed by the time devoted to an appeal which this Court views as misguided. Now, the trust should be front-end loaded to the maximum amount possible to guarantee that Jose gets the treatment he needs immediately. The Court selects proposal Number 1 submitted by plaintiff.

The United States objects to the plaintiff's Special Needs Trust because it will allow Jose's medical

expenses to be paid by Medicaid while preserving the funds in the special needs trust intended by the Court to pay for Jose Dutra's medical expenses. The government points out that upon Jose's death, the State of Washington and not the federal government, would have the primary right to be reimbursed for medical care paid for through Medicaid. (See U.S. Submission of Periodic Payment Proposal 4:13-18, Dkt. #93-1). The United States forgets its status in this case. The United States is the tortfeasor legally responsible for profound brain damage to a youngster. As a tortfeasor, it is obligated to compensate the plaintiff for the damages it has caused. As a government, it chooses to provide services to certain citizens in need. It enacted legislation that allows disabled citizens under 65 to obtain medicaid payments even if they have trust assets which would otherwise disqualify them from such benefits. Upon the death of the trust beneficiary, the trust must reimburse Medicaid from remaining trust assets. Put simply, the law allows, but does not compel, disabled trust beneficiaries to use Medicaid services when necessary or appropriate.

Anywhere from 50% to 83% of the cost of a state's Medicaid programs is paid by the federal government. Nevertheless, the right to reimbursement for medicaid benefits provided a disabled citizen with a special needs trust is exercised by the state, not the federal government. *See* 42 U.S.C. § 1396 p(d)(4)(A). The law does not compel a different outcome where, as here, the tortfeasor responsible for funding the special needs trust is also the federal government. The Court sees no need to treat the United States differently than any other tortfeasor under Washington law.

Next, the United States argues that if the Court accepts the Special Needs Trust as the vehicle to pay Jose's future medical expenses, a special provision should be added to the trust requiring the notification of the federal government when Jose dies. The government wants to decide if they should petition the Court to seek a return of trust corpus to the government. RCW 4.56.260(5) provides that upon the death of a judgment creditor a "party in interest" may petition the Court to modify the judgment to award and apportion the unpaid future damages. In this case, for reasons stated below, the government will likely satisfy the judgment with a lump sum payment into the special needs trust established for Jose Dutra. Upon payment by the defendant, neither the trust nor Jose Dutra will be a judgment creditor. Moreover, the government will not be a party in interest as that term is used in the statute. Rather, the government will be a tortfeasor which has satisfied the judgment against it well before the death of the plaintiff. It will have no future interest in the corpus of the trust. In the event that the defendant opts to

perform under proposal 1 submitted by the plaintiff, the periodic payments will end in the sixth month following judgment. In any event, this Court will not require the notification to the government of Jose Dutra's death.

Finally, the United States argues that this Court cannot require the United States to pay future periodic payments or to purchase annuities. U.S. Memo 6:16-22, Dkt. #93-1. With this argument we come full circle. If the Court does not grant the U.S. a reversionary medical trust, then it cannot compel future periodic payments or the purchase of annuities as mandated by the same statute the government says it wants the Court to implement.

According to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) a district court may only award lump sum money judgments against the government. *See Hull v. United States*, 971 F.2d 1499, 1504-05 (10th Cir. 1992), cert. denied, 507 U.S. 1030 (1993); *Reilly v. United States*, 863 F.2d 149, 169 & n.16 (1st Cir. 1988); *Francel v. Heym*, 466 F.2d 1226, 1228-29 (3rd Cir. 1971). The United States also argues that District Courts lack jurisdiction to order the United States to pay future periodic payments, or to purchase annuities. *See Hill v. United States*, 81 F.3d 118, 120 (10th Cir. 1996).

Once again, the United States seems to argue that if the Court rejects a reversionary medical trust then the United States prefers to pay the judgment the old fashioned way, one lump sum payment either to the plaintiffs or into the Registry of the Court. This is exactly the position taken by the United States at trial.

Neither the Washington statute nor the opinion of the 9th Circuit compels the Court to adopt a reversionary medical trust favoring the defendant in this case. The Court has rejected such a proposal on multiple occasions. The Court has now accepted plaintiff's proposal 1 as that proposal which best serves the needs of the plaintiff and the interests of justice. Defendant has until the end of business on October 31, 2006 to inform the Court that it withdraws the request for periodic payments. Depending on the decision of the defendant, judgment will be entered by the Court either requiring the U.S. to pay a lump sum into the special needs trust as originally ordered in 2005, or to purchase an annuity contract which fulfills the precise terms of plaintiff's proposal 1.

Post-judgment interest is not allowed under applicable law until the judgment becomes final after review on appeal, and then only from the date of filing of the transcript of the Judgment with the Secretary

of the Treasury. *Romero v. United States*, 865 F. Supp. 585 (E.D. Mo. 1994).

**IT IS SO ORDERED.**

DATED this 23rd day of October, 2006.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 6